**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Duane Gerber, an individual; and TDL Professionals, Inc., a Utah corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Wells Fargo Bank, N.A., a California Corporation,<br><br>Defendant. | No. CV 11-01083-PHX-NVW<br><br>**ORDER** |

Before the Court is "Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' Complaint" (Doc. 7). For the reasons stated below, the motion will be granted but Plaintiff will receive leave to amend.

**I.      LEGAL STANDARD**

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged, *Iqbal*, 129 S. Ct. at 1949. "Determining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. A proper complaint needs no "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim," *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

If a plaintiff alleges a fraud-based cause of action, Fed. R. Civ. P. 9(b) requires the plaintiff to "set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). The plaintiff should also allege the identity of the person who made the misrepresentation; the time, place, content, and manner of the misrepresentation; the persons who heard, read, or otherwise received the misrepresentation; and the injury caused by reliance on the misrepresentation. 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[1][b] (3d ed. 2010).

In evaluating a motion to dismiss, courts accept all of the plaintiff's plausible factual allegations as true and construe the pleadings in a light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Court generally does not look beyond the pleadings, but may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**II.  BACKGROUND**

Some time ago, a homeowner in Avondale, Arizona, defaulted on her house payment obligations to Defendant Wells Fargo, which held both the senior lien and a junior lien. The junior lien secured a home equity line of credit. Both liens were properly recorded.

At Wells Fargo's direction, a trustee held a trustee's sale in August 2010 on the junior lien only, although Wells Fargo had yet to sell the senior lien. The Notice of Trustee's Sale did not specifically state that the interest for sale was a junior lien, nor did

it mention the senior lien, but it warned that "[c]onveyance of the property shall be without warranty, express or implied, and subject to all liens, claims or interest having a priority senior to the Deed of Trust. The Trustee shall not express an opinion as to the condition of title." (Doc. 7-1 at 17.)

Plaintiff Duane Gerber was the high bidder for the Avondale junior lien, paying $68,226. Although his complaint does not specifically say so, it appears that he bid under the impression that the interest for sale was a senior lien. The complaint says nothing about whether Gerber performed a title search. Gerber later conveyed his newly-bought interest to his company, TDL Professionals, Inc. The complaint likewise says nothing about whether TDL performed a title search.

In January 2011, Wells Fargo noticed a new trustee's sale for the Avondale property. It appears that this second trustee's sale was the first Gerber (or TDL) knew of the senior lien, but again, the complaint does not specifically say so.

Facing the possibility of losing the $68,000 investment, Gerber and TDL (collectively, "Gerber," unless the context requires otherwise) filed a complaint in Maricopa County Superior Court claiming that Wells Fargo had engaged in statutory consumer fraud. The Superior Court granted a temporary restraining order against the trustee's sale, after which Wells Fargo removed to this Court. Wells Fargo then filed the pending motion to dismiss. The Court called for further briefing on whether *Restatement (Second) of Contracts* §§ 151–58, regarding the doctrine of mistake, has any relevance. The parties submitted supplemental briefs on that issue and the Court heard oral argument on October 6, 2011.

**III.   ANALYSIS**

    **A.   Arizona Consumer Fraud Act**

        **1.   Elements of the Cause of Action**

Gerber alleges that "Wells Fargo has an established pattern or practice of conducting trustee's sales on junior liens when it also holds a senior lien on the same property. [¶] This practice is done with the intent and hope that unwary customers will

be deceived and that Wells Fargo will be [*sic*] receive more than the fair market value of the property." (Doc. 1-1 ¶¶ 20–21.) Gerber therefore accuses Wells Fargo of fraud under the Arizona Consumer Fraud Act:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A). "Merchandise" here includes "real estate." *Id*. § 44-1521(5).

The Consumer Fraud Act contains no mention of private remedies, but instead grants enforcement powers to the attorney general. *Id*. §§ 44-1524 to -1534. In 1974, the Arizona Supreme Court held that the Act provides an implied private right of action to "a person who has been damaged by the practices declared to be unlawful." *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974).

*Sellinger* did not establish the limits of this private right, except that the claimant must be "a person who has been damaged." Given that the Act itself applies "whether or not any person has in fact been misled, deceived or damaged," A.R.S. § 44-1522(A), *Sellinger*'s interpretation created uncertainty about the scope of a private Consumer Fraud Act claim, and how it differed from common law fraud.

The first Arizona Court of Appeals decision to interpret *Sellinger* added a reliance element, reasoning that reliance is a "prerequisite" to damages. *Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ct. App. 1978). However, *Peery* further "h[e]ld that the *right* to rely, though a necessary element in a common law fraud action, is not essential to a statutory fraud action in Arizona." *Id*. at 270, 585 P.2d at 578 (emphasis added).

Since *Peery*, the elements of statutory fraud have generally been stated as "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise. An injury

- 4 -

occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004) (footnote and citation omitted). Recognizing that the Act itself prohibits more than just "false promise[s] or misrepresentation[s]," some courts have extended the elements of the cause of action to "'concealment, suppression or omission' of any material fact." *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 297, 890 P.2d 69, 72 (Ct. App. 1994) (quoting A.R.S. § 44-1522(A)).

The foregoing statements of elements do not incorporate every form of deception prohibited by the Consumer Fraud Act. For example, the Act prohibits "false pretense[s]" and "false promise[s]," A.R.S. § 44-1522(A), but courts have not mentioned these form of deception when setting forth the elements of the private right. Nonetheless, there is no basis in precedent or reason to assume that the private right of action encompasses only *some* of the forms of deception described in the Act. Accordingly, making room for every form of deception described in the Act, the elements of statutory consumer fraud in Arizona are as follows:

    1) a deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission;

    2) made in connection with the sale or advertisement of any merchandise;

    3) on which the claimant relied, even if unreasonably;

    4) which caused claimant's damages.

**2.**  **Gerber's Complaint Compared to Elements of Cause of Action**

For purposes of this motion, there is no reasonable dispute regarding the second and fourth elements — *i.e.*, that Wells Fargo's allegedly deceptive acts were made in connection with the sale of "merchandise" (real estate), and that Gerber's damages flow from the alleged deception. This analysis therefore examines only the first and third elements.

### a. First Element: Deception

In the residential real estate context, it is usually economically foolish to buy a junior lien subject to a senior lien because the junior lien is usually worthless. One who puts a worthless lien up for sale — as Wells Fargo allegedly did — is therefore bound to raise suspicions.

At oral argument, Wells Fargo offered what was represented as a benign explanation. First, Wells Fargo insisted that a junior lien has real value because a party buying a junior lien can reinstate the primary mortgage under A.R.S. § 33-813(A). That statute grants "any person having a subordinate lien" the right to "reinstate [the loan securing the senior lien] by paying . . . the entire amount [in arrears]," and by paying the expenses the trust beneficiary incurred to protect its interest. Second, Wells Fargo's home equity division usually gets the short end of the stick when the mortgage division (which operates separately) sells its senior interest first, because those sales almost always result in a credit bid, leaving nothing for the junior interest. Therefore, Wells Fargo sometimes permits the home equity division to go first.

Wells Fargo's explanation at oral argument is not evidence and Wells Fargo is not necessarily bound by it. To the extent it is true, it does not dispel any suspicions. Admitting that the home equity division gets the short end of the stick when the home mortgage division goes first simply emphasizes that junior liens are usually worthless — generally contradicting the assertion that one who buys a junior lien has bought something of real value. Yes, the right to reinstate has theoretical value, but no practical value if the senior lien is undersecured — as is usually the case in the Phoenix metro area today.

No located authority addresses whether Wells Fargo's alleged conduct is a deceptive practice for Consumer Fraud Act purposes. The closest Arizona case appears to be *Cearley v. Wieser*, 151 Ariz. 293, 727 P.2d 346 (Ct. App. 1986), which affirmed a jury award under the Consumer Fraud Act where the defendant attempted to assign his liquor license knowing that the law would not permit an assignment. *Cearley* supports

the general principle that offering for sale something the seller knows to be worthless is a deceptive act.

A New Jersey case brought in the early 1970s under a consumer fraud statute materially identical to Arizona's is also informative, despite the separation in time and distance. *See Kugler v. Haitian Tours, Inc.*, 293 A.2d 706 (N.J. Super. Ch. 1972) (applying N.J. Stat. § 56:8-2). Divorce laws in New Jersey were more strict then, creating a market for travel packages to places where New Jersey couples could obtain a divorce more easily. One company began advertising "Haitian divorce" packages. The validity of a divorce granted in Haiti was highly questionable, despite principles of international comity, and the company therefore

> refrain[ed] from expressing any view of the validity of Haitian divorces in New Jersey, [did] not say that they are valid, and as a matter of policy recommend[ed] that customers who want[ed] an opinion as to validity seek the advice of their own counsel. . . . [T]he papers [also bore] the legend: 'Consult your attorney.'

*Id*. at 710. The New Jersey Court nonetheless concluded that the company was perpetrating "a fraud upon the purchasers, for the divorces they obtain are, for all practical purposes, worthless and do not accomplish the purpose for which they are purchased." *Id*.

Whether the junior lien offered by Wells Fargo is also, "for all practical purposes, worthless and do[es] not accomplish the purpose for which [it was] purchased," depends on whether the value of the home continues to secure the senior lien. If not, then the only bidders the lender can expect are those who misperceive what they are bidding for. Accordingly, if a trust beneficiary possesses both the junior and senior lien, and if the beneficiary knows or should know that the collateral no longer fully secures the senior lien, then intentionally causing the trustee to place the junior lien up for sale first is an inherently "deceptive act" and creates a "false pretense" under the Consumer Fraud Act — the pretense that the sale has a good faith economic purpose, and is not simply designed to catch a fool.

Gerber's complaint does not adequately allege facts to support such deception. His complaint implicitly invites the reader to assume that the senior lien was undersecured, and it would be a surprise if the case were otherwise in this real estate market. But the possibility remains that the collateral continued to hold sufficient value. If so, Wells Fargo did not necessarily behave deceptively. Gerber's complaint will therefore be dismissed with leave to amend, to allege sufficient facts.[1]

Wells Fargo nonetheless requests dismissal with prejudice because the trustee's sale notice stated that the winning bidder would receive the property "subject to all liens, claims or interest having a priority senior to the Deed of Trust. The Trustee shall not express an opinion as to the condition of title." This is boilerplate inserted by the trustee largely for its own protection. *See* A.R.S. § 33-811(E) ("The trustee's deed [conveys title] . . . subject to all liens, claims or interests that have a priority senior to the deed of trust."). If it somehow protects Wells Fargo, it does not shield it from liability for deceptive acts. Attempting to sell a worthless interest is itself a deceptive practice, and warning prospective buyers that the interest *might be* worthless does not dispel the deception.[2] Because Wells Fargo held both the junior and senior liens, it can be liable for deceptive practices — regardless of the disclaimer — if it knew or should have known that the senior lien was undersecured but intentionally auctioned the junior lien first.

### b. Third Element: Reliance

The implied private action under the Consumer Fraud Act requires reliance, although it need not be reasonable. Unreasonable reliance exists where a party does not have actual knowledge of the deception, but should. *Peery*, 120 Ariz. at 270, 585 P.2d at

---

[1] Public records can provide much of the necessary data. To the extent they do not (*e.g.*, if the amount still owing on the loan secured by the senior lien is not publicly available), public records usually suffice to provide the "information and belief" necessary to support a plausible inference.

[2] The Court expresses no opinion about a notice of trustee's sale that specifically warns of an undersecured senior lien.

578. Accordingly, if Gerber actually knew about Wells Fargo's senior lien, he cannot establish reliance and his cause of action fails.[3] But if he had no actual knowledge, he can establish reliance even if he should have known.

Gerber alleges nothing about reliance. This omission matters because Gerber cannot maintain a claim if he had actual knowledge of the senior lien. His complaint will therefore be dismissed, but with leave to amend with specifics about what he knew or did not know, including what Gerber's and TDL's title companies told them (if they hired title companies).

Wells Fargo, however, again requests dismissal with prejudice, arguing that Gerber had actual notice as a matter of law because the recording statute, A.R.S. § 33-416, states: "The record of a grant, deed or instrument in writing authorized or required to be recorded, which has been duly acknowledged and recorded in the proper county, shall be notice to all persons of the existence of such grant, deed or instrument . . . ." But "recording acts are not intended as a protection for fraudulent liars." *Restatement (Second) of Torts* § 540 cmt. b (1977). Rather, one who receives "a fraudulent misrepresentation of fact" — here, the false pretense of rational economic value — "is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." *Id*. § 540; *see also Carrel v. Lux*, 101 Ariz. 430, 435–36, 420 P.2d 564, 569–70 (1966) (adopting the first Restatement's corresponding section). Accordingly, recording a deed does not defeat reliance and does not provide a basis to dismiss Gerber's complaint with prejudice.

### 3. Rule 9(b) Analysis

Wells Fargo generally challenges Gerber's complaint under the Rule 9(b) fraud-pleading standard. Although Gerber has not adequately pleaded a deceptive act or

---

[3] Traditional tort law classifies actual knowledge of deception as a form of unreasonable reliance, *Restatement (Second) of Torts* § 541 (1977), but Arizona courts treat actual knowledge as *lack* of reliance, rather than unreasonable reliance, *Cearley*, 151 Ariz. at 295, 727 P.2d at 348; *Peery*, 120 Ariz. at 269–70, 585 P.2d at 577–78.

reliance, his complaint is not otherwise defective under Rule 9(b). He has alleged the identity of the person who made the alleged misrepresentation (Wells Fargo, acting through a trustee); the time, place, content, and manner of the misrepresentation (the Notice of Trustee's Sale and the sale itself in August 2010); the persons who heard, read, or otherwise received the misrepresentation (by necessary implication, Gerber himself must have learned of the trustee's sale); and the injury caused by reliance on the misrepresentation (the potential loss of $68,000). *See* 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b] (3d ed. 2010). Therefore, Gerber's complaint otherwise satisfies Rule 9(b).

### B. Mistake

This Court called for further briefing on whether the doctrine of mistake has any bearing on the current situation. Given the foregoing, the existence and scope of a mistake/avoidance remedy need not be addressed at this time.

### C. Standing

Wells Fargo challenges Plaintiffs' standing. The alleged wrong, says Wells Fargo, was perpetrated on Gerber, not TDL, yet only TDL has a continuing economic stake in the transaction. Technically speaking, Wells Fargo is correct. As alleged, TDL has a claim against Gerber, and Gerber has a third-party claim against Wells Fargo. But Gerber describes TDL as "his company" (Doc. 1-1 ¶ 11), so it is understandable that he does not want to litigate in such a posture.

All of the policy reasons underlying standing doctrine — *e.g.*, a stake in the outcome to sharpen the issues — would undoubtedly be satisfied in the current posture. However, Gerber has offered "to amend the Complaint to reference an assignment of the tort claim from Plaintiff Gerber to Plaintiff TDL." (Doc. 9 at 7.) Given that Gerber will receive an opportunity to amend for substantive reasons, he may also amend to establish an assignment giving TDL the right to pursue the claim.

1  IT IS THEREFORE ORDERED that "Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' Complaint" (Doc. 7) is GRANTED.  Plaintiffs' complaint (Doc. 1-1) is DISMISSED without prejudice.

IT IS FURTHER ORDERED that Plaintiffs may file an amended complaint by November 2, 2011.  If Plaintiffs do not amend by the stated deadline, their case will be dismissed without further notice.

Dated this 19th day of October, 2011.

_____
Neil V. Wake
United States District Judge

- 11 -